UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:12-CR-62-F-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                     ) | O R D E R |
| ) | |
| JOHNNY KINLAW LOCKLEAR, JR, ) | |
| Defendant.         ) | |

This matter was scheduled for hearing on the Defendant's Motion to Suppress [DE-33, -34], on October 19, 2012, at 9:00 a.m. This matter is scheduled for arraignment and trial during the January 28, 2013 term of court.

The Government was represented at the suppression hearing by Assistant United States Attorney Leslie Cooley. The defendant, Johnny Kinlaw Locklear, Jr., was present with his counsel, Thomas Manning. Based on the evidence produced during the hearing, the court renders the following:

### FINDINGS OF FACT

1. On April 2, 2012, an altercation occurred between Nalanie Locklear and Steven Locklear. Nalanie Locklear is the daughter of Defendant Johnny Kinlaw Locklear, Jr. ("Locklear"). Allegedly, Nalanie Locklear parked near Steven Lockear's home and sounded her vehicle's horn to get the attention of her boyfriend, Gary Ransom, who lived nearby. Steven Locklear allegedly argued with Nalanie Locklear about her use of the horn. Nalanie Locklear then went to her boyfriend's residence and informed him of the incident.

2. After hearing about the incident, Gary Ransom allegedly ran out of his house with a pistol and fired shots in the direction of Steven Locklear and Nikoma Locklear, who was also at the scene. Neither Steven Locklear nor Nikoma Locklear were physically injured. Nalanie Locklear allegedly exited the residence with Ransom and witnessed the incident.

3. Steven Locklear and Nikoma Locklear allegedly wrestled the gun away from Gary Ransom during the affray and grabbed Gary Ransom around his neck. Nalanie Locklear then called her father, the Defendant Johnny Kinlaw Locklear, Jr. ("Locklear") and informed him that Steven and Nikoma Locklear were attacking Gary Ransom.

4. Locklear allegedly arrived on the scene with a rifle and threatened to kill Steven Locklear's entire family and burn their house down. Locklear allegedly then fired the rifle in the direction of Steven Locklear two times. Steven Locklear was not physically injured.

5. On the same day, April 2, 2012, Steven Locklear swore out a warrant for arrest against Locklear for Assault with a Deadly Weapon, Assault by Pointing a Gun, and Communicating Threats.

6. Detective Damien McLean ("Detective McLean") of the Robeson County Sheriff's Department initiated an investigation of Locklear. On April 18, 2012, Detective McLean applied for a search warrant for a residence located approximately 150 yards from Locklear's mother's residence. The parties stipulate that Locklear frequently stays overnight at the residence and that he has a reasonable expectation of privacy with respect to the residence.

7. In the affidavit submitted in support of probable cause, Detective McLean indicated that "According to Steven Locklear and Nikoma Locklear: Johnny Kinlaw Lockear Jr. [the Defendant] exited the vehicle with an assault rifle" when he arrived at the scene of the altercation

described above. *See* Appl. and Aff. for Search Warrant [DE 34-3] at 4. The affidavit also indicates that Steven Locklear, Nikoma Locklear, Johnny Locklear (a different Johnny Locklear than the Defendant) and Linda Clark all reported to Detective McLean that they personally observed Locklear discharge his weapon in the direction of Steven Locklear during the April 2, 2012 incident. Thus, the affidavit provides that Deputy McLean interviewed four witnesses, each of whom purportedly observed Locklear with a gun on April 2, 2012.

8. In the affidavit, Detective McLean also asserts that based on his training and experience, persons who bring weapons to incidents similar to the one described frequently keep the weapons in their residences.

9. As part of his investigation, Detective McLean initiated a criminal background check on Locklear. The background check returned several entries, including an arrest in January 2012 for a very similar offense. The background check also indicated that Locklear has a prior felony conviction. Detective McLean included this information in the affidavit.

10. Based on the foregoing information, a North Carolina Superior Court Judge agreed that probable cause existed to search the residence and issued a search warrant. Officers conducted the search on April 18, 2012. Locklear was present during the search, and officers recovered numerous items indicating Locklear frequently stays overnight at the residence. The officers recovered two firearms on the premises.

11. On May 23, 2012, the Grand Jury handed down an indictment charging Locklear with possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Sections 922(g) and 924.

1

## ANALYSIS

Locklear now requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, the United States Supreme Court held that criminal defendants may challenge the veracity of statements made in an affidavit supporting probable cause. *Id.* at 171. To be entitled to a hearing on this issue, a defendant must "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to a finding of probable cause." *Id.* at 155-56. Particularly relevant here, omissions of potentially exculpatory information may warrant a *Franks* hearing if the omissions are "*designed to mislead, or . . . are made in reckless disregard of whether they would mislead.*" *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) (emphasis in original); *United States v. Owens*, 882 F.2d 1493, 1489-99 (10th Cir. 1989); *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986). Thus, to obtain a *Franks* hearing on the basis of an omission, a defendant must make a two-part showing: (1) "the omission [must be] the product of a 'deliberate falsehood or of reckless disregard for the truth.' " *Colkley*, 899 F.2d at 301 (quoting *Franks*, 438 U.S. at 171), and (2) "the omitted material must be 'clearly critical' to the finding of probable cause." *Id.* (quoting *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980)); *see also Franks*, 438 U.S. at 171-72 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.")

This case is remarkably similar to *United States v. Colkley*, 899 F.2d 297 (4th Cir 1990). In *Colkley*, one of the defendants, Jamison Johnson ("Johnson") requested a *Franks* hearing

2

because exculpatory information had been omitted from the affidavit submitted in support of the arrest warrant. *Id.* at 299. Johnson maintained that the affiant should have included the fact that none of the six eyewitnesses to the bank robbery were able to identify him. *Id.* Johnson argued that if the omitted material had been included, the reviewing judicial official would not have found probable cause existed to arrest Johnson. *Id.* The Fourth Circuit rejected Johnson's argument, stating, "And to the extent that the Johnson photospread information has exculpatory value, it is not enough to defeat probable cause when weighed against the informant's tip and Johnson's car purchase with a stolen bait bill." *Id.* at 302. Thus, the *Colkley* court held that a *Franks* hearing is warranted only where the omitted information, if included, would defeat probable cause. *Id.* If the omitted material would not defeat probable cause, then the material is not "necessary to a finding of probable cause" and the second prong of the *Franks* test is not satisfied. *See id.* at 301-02; *Franks*, 438 U.S. at 156.

As in *Colkely*, the officers here had sufficient probable cause to search Locklear's residence even if the potentially exculpatory material had been included in the affidavit. The test for whether probable cause exists is well settled: "[it is] a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Here, four separate witnesses indicated that Locklear possessed a firearm on April 2, 2012. Detective McLean's criminal record check indicated that Locklear was a convicted felon on April 2, 2012. Based on this information, there is a fair probability that contraband (here, the firearm) would be found at Locklear's residence.

3

Locklear asserts that a number of witnesses who were not interviewed by police will state that Locklear did not possess a firearm on April 2, 2012, and that Detective McLean's failure to interview those witnesses and provide the exculpatory information in his affidavit warrants a *Franks* hearing. In addition, Locklear indicates that another witness interviewed by police affirmatively told the officer that Locklear did not possess a firearm on April 2, 2012 and that officer McLean failed to provide that information in the affidavit. Even if all of this potentially exculpatory material was provided to the reviewing judicial officer, the court finds that the information would not affect the probable cause determination. The four witnesses who were not interviewed by the officer are either family or friends of Locklear, and thus the reviewing judicial officer may properly have questioned their credibility. The fifth witness, who allegedly reported to police that Locklear did not have a gun on April 2, 2012, is not necessary to a finding of probable cause. Where a reviewing judicial officer is presented with four witnesses who personally observed Locklear with a weapon, the omission of information indicating that one witness did not see Locklear with a weapon would not have changed the probable cause determination. Thus, as in *Colkely*, the omitted information was not "necessary to a finding of probable cause" because even assuming Detective McLean provided all of this exculpatory material in his affidavit, the reviewing judicial officer may still have found probable cause existed to search Locklear's residence.

As a more general matter, the court agrees with the *Colkley* court that requiring officers to include all potentially exculpatory information in a warrant affidavit "potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Colkely*, 899 F.2d at 301. The court

4

is simply not in a position to require an officer applying for a search warrant to interview every potential witness to a crime. Where four witnesses all confirm that a defendant possessed a firearm on a certain date, and that defendant has a record of a felony conviction on that date, probable cause exists to search that defendant's home for the firearm. A *Franks* hearing would only be warranted here if there were some affirmative evidence that the witness statements were false *and* the officer had reason to believe the statements were false when he included them in the affidavit. Locklear has not provided the court with any evidence, beyond the omission itself, that Detective McLean intentionally or with reckless disregard for the truth provided false statements in the warrant affidavit.[1]

## CONCLUSIONS OF LAW

1. Locklear has not made the "substantial preliminary showing" required by *Franks* before the court may set a hearing in which Locklear may challenge the veracity of statements made in an affidavit submitted in support of probable cause.

2. Probable cause existed to search Locklear's home on April 18, 2012. A reviewing judicial officer reasonable could have found a "fair probability that contraband [would] be found" in Locklear's residence based on the four eyewitnesses seeing him with a firearm on April 2, 2012. *Gates*, 462 U.S. at 238.

3. The omitted exculpatory evidence was not "necessary to the finding of probable cause[,]" *Franks*, 438 U.S. at 156, because the reviewing judicial officer may have found probable cause to search the residence even if he had been provided with the omitted

---

[1] The Fourth Circuit has expressed doubts that courts should infer intent or reckless disregard from the fact of omission alone. *Colkely*, 899 F.2d at 301 ("We have doubts about the validity of inferring bad motive from the fact of omission alone . . . .").

information. *See Colkley*, 899 F.2d at 302 ("and to the extent that the [omitted material] has exculpatory value, it is not enough to defeat probable cause").

4. As to the first prong of the *Franks* analysis, Locklear has not made a sufficient showing that Detective McLean intentionally, or with reckless disregard for the truth, provided false statements in the warrant affidavit. The fact that Detective McLean did not interview every potential witness to the crime does not show his statements in the warrant affidavit were made "in reckless disregard for the truth," especially when four separate witnesses indicated Locklear possessed a firearm on April 2, 2012.

## Summary

In summary, and for the foregoing reasons, Locklear's Motion to Suppress [DE-33, -34] is DENIED.

SO ORDERED.

This the 19th day of November, 2012.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

6